# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00409-SCT

*FERNANDO MARTINEZ PARKER a/k/a TAL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/2008 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KELSEY LEVOIL RUSHING |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED; REMANDED FOR RESENTENCING AS TO COUNT II - 03/25/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. Fernando Martinez Parker was indicted by a grand jury of Coahoma County in November 2004 for possession of a firearm on educational property in violation of Mississippi Code Section 97-37-17, for murder of Jarvis Moore in violation of Mississippi Code Section 93-3-19, and for aggravated assault of Justin Moore in violation of Mississippi Code Section 97-3-7(2)(b). Parker was tried and convicted of all three charges. The Honorable Kenneth Thomas sentenced Parker to life without parole for the murder of Jarvis

Moore, three years for possession of a firearm on educational property, and fifteen years for aggravated assault of Justin Moore. Aggrieved, Parker appeals his conviction and sentence.

**FACTS**

¶2.    On October 26, 2004, four Coahoma Community College students, Justin Moore, Jarvis Moore, Ketrick Buck, and John Jamison, walked across campus from their dorm, Friends Hall, to Moore Hall to get a video game from their friend, Kendrick Harris.[1] Kendrick lived on the bottom floor of Moore Hall. When these four men arrived at Moore Hall, a verbal altercation began between them and a group of students congregating on the second-floor balcony. The group on the second floor included Vincent Cross, Jonathan Haney, and Fernando Parker.

¶3.    Justin Moore, Buck, and Haney testified at trial that the verbal altercation quickly turned into a physical altercation, after which Parker pulled out a gun and began shooting. Justin Moore and Buck also testified that Parker shot and killed Jarvis Moore and shot and injured Justin Moore. Both Justin Moore and Buck testified that Parker aimed directly at Jarvis Moore. Haney hid in a dorm room during the actual shooting, but he testified to seeing Parker with the gun immediately after the shooting ceased.

¶4.    According to law enforcement testimony, officers arrested Parker the following day. Parker gave a written statement to police after waiving his rights. Parker's statement, dated October 27, 2004, reads as follows:

---

[1]The record is inconsistent regarding this friend's name. The State refers to this friend as Steve Harrison in its opening statement, but two witnesses, Ketrick Buck and Justin Moore, stated that the friend's name was Kendrick Harris.

I have been going to school at Coahoma Community College for 2 years. I have lived in the Moore Building the whole time I have been in school. I started having problems with these guys about a week ago. I only know one guy's nickname which is "J Streel". There are four other guys but I do not know their names. I was in the dorms, laying on the bench outside my bedroom when I heard cussing and yelling outside on the balcony. I walked to the door, which was open, and I got punched in the face. J Streel and another guy started punching me and I punched them back. I had been carrying a .380 pistol in my pocket for about a week, and it fell out of my pocket. I saw J Streel and the guy and I had been fighting punching Vincent Cross, and I picked up the gun, aimed at the guy I had been fighting, and shot at least five times. I did not see any other weapons, only people throwing punches. I shot the guy to get him off me. Everybody started running, and I ran down the stairs and behind the dorm building. I threw the gun into the woods, hoping it would land in the water. I ran back to my room, and locked myself in the closet because I was scared the police would come and I did not know what they would do. I stayed in the closet a long time until I called my mother. I told her what happened, and she told me to turn myself in to the police. I came out the door and did what the officers told me to do.

The statement was signed by Parker and witnessed by then-Officer John Marsh of the Mississippi Bureau of Investigation. Marsh testified at trial and identified the statement as having been made by Parker.

¶5. According to trial testimony, the gun used at the shooting was never found. An Alcohol Tobacco and Firearms trace, however, revealed that Parker owned a Cobra FS380 (or a .380 caliber pistol), which officers identified as the same type of weapon used to kill Jarvis Moore. The trace document also was entered into evidence. Further, Mississippi Bureau of Investigation Officer Allen Thompson testified to finding a box of .380 cartridges in Parker's dorm room, and Ken Gill, the forensic lab technician, testified to finding six .380 caliber shell casings at the scene. Parker did not testify on his own behalf.

**COURSE OF PROCEEDINGS**

¶6.    A grand jury returned an indictment on November 30, 2004, charging Parker with: (1) possession of a firearm on educational property, (2) the murder of Jarvis Moore, and (3) the aggravated assault of Justin Moore.  The Coahoma County Circuit Court appointed an attorney for Parker and set the trial date for December 20, 2004.  The case was continued five times over the next three years as different attorneys were appointed, retained, withdrawn, and reappointed, all while Parker's status fluctuated between indigent and non-indigent.

¶7.    Parker first filed a Motion for Appointment of Attorney on December 7, 2004, swearing that he had insufficient funds to employ an attorney.  The court appointed David Tisdell, a licensed and practicing Mississippi attorney, to represent Parker.  On February 1, 2005, Tisdell filed a Motion to Withdraw because Parker had retained attorney Michael Robinson of Smith, Rushing, Cotton & Robinson law firm to represent him at trial. Robinson filed a Motion to Withdraw on May 11, 2005, due to health reasons. The court denied this request.  The court further noted that the firm would not be relieved of its obligation, though it would entertain another request should Parker retain a different lawyer. Robinson filed a Motion to Reconsider or in the alternative a Motion to Withdraw one month later, based again on Robinson's deteriorating health, the inability of the firm's other attorneys to represent Parker due to scheduling conflicts, and the fact that Parker had agreed to pay the firm $10,000 for representation, but had only paid $2,100 to date.  The court denied the Motion to Reconsider, but granted Robinson's Motion to Withdraw due to Parker's failure to pay.  However, the court ordered the firm to refund Parker's $2,100, which Parker could use to obtain the attorney of his choice.

4

¶8.    The court also refused to appoint Parker another attorney. Nevertheless, on July 15, 2005, the trial court authorized Parker to proceed in forma pauperis and reappointed Tisdell to represent Parker. On February 14, 2006, Judge Larry Lewis conducted a jury trial that ended in a mistrial.

¶9.    On February 22, 2006, Tisdell again withdrew due to a conflict of interest with one of the State's potential witnesses, and Allan D. Shackleford was appointed as Parker's attorney. Shackleford continued to represent Parker through the trial, which finally began on December 5, 2007. The State's evidence included eyewitnesses, law enforcement, and forensic testimony, as well as photographs of physical evidence recovered from the crime scene. The actual gun was not admitted into evidence, because it was never recovered.

¶10.   After the State rested, the defense moved for a directed verdict, but the trial court denied this motion. Parker's trial counsel then rested without making an opening statement In fact, Parker's counsel did not call a single witness to the stand (Parker stated at trial that he chose not to testify). In his summation, Parker's trial counsel admitted to count one, firearm possession, but claimed that further testimony was not needed for the other charges of murder and aggravated assault because the State had not met its burden of proof for these charges.

¶11.   The trial judge then met with counsel regarding jury instructions. The defense moved for the inclusion of manslaughter and self-defense instructions; the judge heard arguments regarding these two instructions. Based only on Parker's statement, the trial judge allowed these instructions. Parker's trial counsel again moved for directed verdict, which the trial court denied.

¶12. The trial concluded on December 7, 2007, with the jury returning guilty verdicts for firearm possession, murder, and aggravated assault. Judge Kenneth L. Thomas held Parker's sentencing hearing on February 8, 2008. Judge Thomas sentenced Parker to three years and a $1,000 fine for firearm possession, life without parole for murder, and fifteen years for aggravated assault. Parker was remanded to the custody of the Coahoma County Sheriff's Department to be transported to the Mississippi Department of Corrections. Parker's trial counsel did not file a motion for a new trial or judgment notwithstanding the verdict. Parker appeals, and asks that this Court reverse the trial court or, in the alternative, remand for resentencing.

## ANALYSIS

¶13. Parker asserts the following six errors on appeal:

I. **Whether the Trial Court Illegally Imposed a Sentence of Life Without Parole for Parker's Murder Conviction.**

II. **Whether the Trial Court Subjected Parker to Double Jeopardy.**

III. **Whether the Trial Court Erred by Failing to Order a Competency Hearing.**

IV. **Whether the Trial Court Erred by Denying Parker's Motions for Directed Verdict.**

V. **Whether Parker's Trial Counsel Rendered Ineffective Assistance of Counsel.**

VI. **Whether Parker Is Entitled to Relief Based on Cumulative Error.**

## DISCUSSION

¶14. Except for the denial of the motion for directed verdict, all issues are raised for the first time on appeal. Generally, a party who fails to make a contemporaneous objection at

6

trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred. *Walker v. State*, 913 So. 2d 198, 216 (Miss. 2005). Plain error exists where such error affects the defendant's substantive/fundamental rights, even though no objection was made at trial. Thus, where Parker's substantive and fundamental rights are affected, this Court will apply the plain-error doctrine in reviewing the alleged errors.

**I.    Whether the Trial Court Imposed an Illegal Sentence.**

¶15.    On appeal, Parker argues that the trial court illegally imposed a sentence of life imprisonment without parole for the murder conviction. This Court agrees with Parker on this assignment of error, and finds that trial court illegally sentenced Parker to life imprisonment without parole. The trial court should have sentenced Parker to no more than life imprisonment.

¶16.    Mississippi Code Section 97-3-21 states:

> Every person who shall be convicted of *murder* shall be sentenced by the court to *imprisonment for life* in the State Penitentiary.

> Every person who shall be convicted of *capital murder* shall be sentenced (a) to death; (b) to imprisonment for *life in the State Penitentiary without parole*; or (c) to imprisonment for life in the State Penitentiary with eligibility for parole as provided in Section 47-7-(1)(f).

Miss. Code. Ann. § 97-3-21 (Rev. 2006) (emphasis added). Parker was indicted and convicted of deliberate-design murder pursuant to Mississippi Code Section 97-3-19. Section 97-3-21 permitted the trial court to impose a sentence of only imprisonment for life. Miss. Code Ann. §  97-3-21 (Rev. 2006). The trial court imposed a sentence of life imprisonment without parole, which exceeded the statutory maximum. Therefore, we find

7

that Parker should be resentenced in accordance with Mississippi Code Section 93-3-21 on his murder conviction only.

¶17. Additionally, we take this opportunity to address the argument put forth by the State that Parker's sentence was legal under Mississippi Code Section 47-7-3. Mississippi Code Section 47-7-3 provides, in pertinent part:

> No person shall be eligible for parole who is convicted or whose suspended sentence is revoked after June 30, 1995, except that an offender convicted of only nonviolent crimes after June 30, 1995, may be eligible for parole if the offender meets the requirements in subsection (1) and this paragraph.

Miss. Code Ann. § 47-7-3(1)(g) (Rev. 2004).[2] The Court of Appeals has interpreted this statute to mean that "Mississippi has abolished parole for crimes occurring after June 30, 1995, pursuant to Miss. Code Ann. § 47-7-3(1)(g) (Rev.1993 & Supp.1998)[.]" *Wade v. State*, 724 So. 2d 1007, 1007-08 (Miss. Ct. App. 1998).

¶18. Section 47-7-3 applies only to the internal operating procedures of the Department of Corrections and the prisons and does not affect a judge's sentencing prerogative under the criminal statutes. Thus, the Court of Appeals' interpretation of Section 47-7-3 is incorrect because the statute does not "abolish parole." *See Wade*, 724 So. 2d at 1007-08.

**II. Whether the Trial Court Subjected Parker to Double Jeopardy.**

---

[2] The statute defines "nonviolent crime" to mean "*a felony other than homicide*, robbery, manslaughter, sex crimes, arson, burglary of an occupied dwelling, aggravated assault, kidnapping, felonious abuse of vulnerable adults, felonies with enhanced penalties, the sale or manufacture of a controlled substance under the Uniform Controlled Substances Law, felony child abuse, or exploitation or any crime under Section 97-5-33 or Section 97-5-39(2) or 97-5-39(1)(b), 97-5-39(1)(c) or a violation of Section 63-11-30(5)." Miss. Code Ann. § 47-7-3-(1)(g)(Rev. 2004) (emphasis added).

¶19.    Parker argues that the trial court erred by subjecting him to double jeopardy. Specifically, Parker claims that he was convicted of capital murder instead of deliberate-design murder. Parker further argues that capital murder and possession of a firearm on educational property have the same elements, and that firearm possession on educational property is a lesser-included offense of capital murder. This Court reviews a claim of double jeopardy de novo. *Boyd v. State*, 977 So. 2d 329, 334 (Miss. 2008).

¶20.    The Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *Deeds v. State*, WL 4350783, at * 2 (Miss. Dec. 3, 2009). "Similarly, Section 22 of the Mississippi Constitution of 1890 provides that 'no person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution.'" Miss. Const. art. 3, § 22; *id*. at *2.

¶21.    In the instant appeal, Parker cites *Edwards v. State*, 737 So. 2d 275, 321 (Miss. 1999), to support his position that possession of a firearm on educational property was the underlying felony in the capital-murder charge and thus the grounds for his double-jeopardy claim. The defendant in *Edwards* was charged with two counts of capital murder while engaged in the commission of an armed robbery, as well as one count of armed robbery. *Id.* at 284. This Court held that it was double jeopardy to convict the defendant of both capital murder with armed robbery as the underlying offense and armed robbery, and reversed the armed-robbery conviction. *Id.* at 321.

¶22.    The present case is easily distinguished from *Edwards*. Parker's indictment charged him with one count of deliberate-design murder pursuant to Mississippi Code Section 97-3-

9

19, as well as one count of possession of a firearm on educational property pursuant to Mississippi Code Section 97-37-17.  Section 97-3-19(1)(a) defines murder, in part, as "the killing of a human being without the authority of law by any means or in any manner *shall be murder* in the following cases: (a) [w]hen done *with deliberate design* to effect the death of the person killed, or of any human being."  Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2006) (emphasis added).  The elements of firearm possession on educational property include possessing or carrying a gun, either openly or concealed, on a community college campus.

Miss. Code Ann. § 97-37-17(2) (Rev. 2006).[3] The pertinent language of the indictment

reads:

> (1) [Parker] did unlawfully, willfully and feloniously, without the authority of law, and *with deliberate design* effect death, kill and murder a human being," and (2) "did unlawfully, willfully and feloniously and without authority of law, possess a firearm, to-wit: a pistol, while on the campus of Coahoma Community College . . . .

¶23.　Parker's claim that "the charge in count one encompassed the charge in count II" is

unsupported by the record. Parker was charged with and convicted of separate crimes, as

---

[3]　Mississippi Code Section 97-37-17 provides, specifically:

> (1)(a) "Educational property" shall mean any public or private school building or bus, public or private school campus, grounds, recreational area, athletic field, or other property owned, used or operated by any local school board, school, college or university board of trustees, or directors for the administration of any public or private educational institution or during a school-related activity, and shall include the facilities and property of the Oakley and Columbia juvenile training schools operated by the Department of Human Services; provided, however, that the term "educational property" shall not include any sixteenth section school land or lieu land on which is not located a school building, school campus, recreational area or athletic field.
>
> (2) It shall be a felony for any person to possess or carry, whether openly or concealed, any gun, rifle, pistol or other firearm of any kind, or any dynamite cartridge, bomb, grenade, mine or powerful explosive on educational property. However, this subsection does not apply to a BB gun, air rifle or air pistol. Any person violating this subsection shall be guilty of a felony and, upon conviction thereof, shall be fined not more than Five Thousand Dollars ($5,000.00), or committed to the custody of the State Department of Corrections for not more than three (3) years, or both.

Miss. Code Ann. § 97-37-17 (Rev. 2006)

evinced by the language in the indictment and the jury instructions. Each charge consists of entirely different elements, requiring different facts. Double jeopardy is not violated where a defendant is convicted of separate crimes. *See **Lee v. State***, 469 So. 2d 1225, 1228-29 (Miss. 1985). Thus, it is illogical for Parker to argue on appeal that trial court subjected him to double jeopardy, as he was not tried twice for the same crime.

¶24. Additionally, Mississippi Code Section 99-7-2 states:

(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

(2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

Miss. Code Ann. § 99-7-2 (Rev. 2007). Here, the trial court correctly tried Parker in a single proceeding, and Parker's criminal charges were based on a single, continuous act. Parker's offenses were properly charged in separate counts; thus the trial court did not subject Parker to double jeopardy.

### III. Whether the Trial Court Erred by Failing to Order a Mental Examination.

¶25. Parker further avers that the trial court erred by failing to order a competency hearing at trial. Parker implies, but does not specifically state, that he is entitled to a new trial, or at least a competency hearing, because the trial testimony indicated that there was an issue of the defendant's competency at the time of the alleged crime. Parker argues that the trial court

12

never raised an issue of competency or confirmed Parker's competency as he believes the law requires, citing Mississippi Uniform Circuit and County Court Rule 9.06 as support.[4]

¶26.    The determination of whether there are reasonable grounds for a competency test is discretionary with the court. *Conner v. State*, 632 So. 2d 1239, 1248 (Miss. 1997) *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158, 162 (Miss. 1999). The test for competency to stand trial and thereby whether reasonable grounds exist is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has a rational as well as factual understanding of the proceedings against him." *Dunn v. State*, 693 So. 2d 1333, 1340 (Miss. 1997) (quoting *Godinez v. Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321(1993)).

¶27.    We find that Parker's argument is fatally flawed in two ways. First, Parker alleges that there were issues surrounding his competency at the time of the crime, and not at the time of trial, as the rule requires. *See* Miss. Unif. Cir.& Cty. R. 9.06. Since Parker avers on

---

[4] The pertinent language of Uniform Circuit and County Court Rule 9.06 states:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
>
> After examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.

Miss. Unif. Cir. & Cty. R. 9.06.

appeal that he was allegedly incompetent at the time of the crime, an insanity defense would have been more appropriate.[5]

¶28.    Second, Parker's argument fails because he claims, incorrectly, that the rule required the trial court to bring forth the issue on its own motion.  The rule, however, provides that the court must order a mental examination by some competent psychiatrist only if it has "reasonable grounds" to do so.  Miss. Unif. Cir. & Cty. R. 9.06.  Thus, if reasonable grounds exist, the rule requires that the court order the defendant to submit to a mental examination, and after such examination, then the court shall conduct a hearing to determine if the defendant is competent to stand trial.  The trial court may raise the issue of competency to stand trial *sua sponte* or an attorney may make a motion concerning the defendant's ability to stand trial.  Miss. Unif. Cir. & Cty. R. 9.06.  Here, Parker fails to present any facts on appeal that the trial court had reasonable grounds to order Parker to submit to a mental examination; further, the record lacks any evidence to show that Parker's counsel raised the issue of his competency to stand trial. Thus, after a thorough review of the record, this Court finds that the trial court did not abuse its discretion by failing to order a mental examination, as it had no reasonable grounds to do so.

####    IV.    Whether the Trial Court Erred by Denying Parker's Motions for Directed Verdict.

¶29.    Parker argues that the trial court erred by denying his motion and renewed motion for directed verdict.  Specifically, Parker claims that the State failed to prove all of the elements

---

[5] The record lacks any evidence that Parker intended to put forth an insanity defense at trial.

of deliberate-design murder. Parker further avers that Buck and Justin Moore, two of the State's witnesses testifying against Parker, had an interest in Parker's conviction, but never states how or why this was so. On the contrary, the record shows that neither Buck nor Justin Moore would gain anything from Parker's conviction, as neither men were ever considered suspects in the case.

¶30. This Court reviews the denial of a motion for a directed verdict de novo. ***Branch v. State***, 998 So. 2d 411, 416 (Miss. 2008). "In reviewing a denial of a motion for a directed verdict, if we determine the evidence points in favor of the defendant on any element of the offense such that a reasonable juror could not have found the defendant guilty beyond a reasonable doubt, we must reverse the conviction." ***Id.*** (*quoting* ***Coleman v. State***, 947 So. 2d 878, 881 (Miss. 2006)).

¶31. The elements for deliberate-design murder are: (1) the defendant killed the victim, (2) without authority of law, and (3) with deliberate design to effect his death. Miss. Code Ann. § 97-3-19 (Rev. 2006). Parker argues that the State never presented proof of each of these elements, and that, if anything, it minimally made a prima facie case against him. However, considering the evidence in the light most favorable to the State, the evidence presented was legally sufficient to support the murder conviction.

¶32. The evidence in the record clearly shows (1) that Parker was in possession of a .380 caliber weapon and cartridges on the night in question, (2) that Parker shot and injured Justin Moore, (3) that Parker shot and killed Jarvis Moore, and (4) that Jarvis Moore's death resulted from several gunshot wounds originating from a .380 caliber weapon. The

15

evidence further shows that Parker killed Jarvis Moore without the authority of law, as nothing in the record demonstrates that Parker's life was in imminent danger.

¶33. Finally, there is evidence in the record to support the jury's finding that Parker killed Jarvis Moore with the deliberate design to effect his death. This Court has acknowledged "that 'deliberate design' to take the life of another connotes intent to kill." *Jones v. State*, 710 So. 2d 870, 878 (Miss. 1998) (citing *Peterson v. State*, 242 So. 2d 420, 427 (Miss. 1970)). "[D]eliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Brown*, 965 So. 2d 1023, 1030 (Miss. 2007) (quoting *Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995)). Parker admitted in his statement that he had possessed the gun at least a week prior to the shooting. He further admitted that, during the shooting, he deliberately aimed at the person who punched him. Ketrick Buck testified that Parker "popped off a couple of rounds," paused, then fired more rapidly, all while aiming at Jarvis Moore. The evidence supports the finding that Parker had the requisite intent, even if it formed just moments before the act.

¶34. In light of these facts, this Court finds that the evidence is sufficient to support Parker's murder conviction, and that any rational juror could have found beyond a reasonable doubt that the State proved each element of deliberate-design murder. Thus, the trial court properly denied Parker's motion for a directed verdict.

**V. Whether Parker's Trial Counsel Rendered Ineffective Assistance.**

¶35. Next, Parker avers that he was denied his Sixth Amendment right to effective assistance of counsel. Parker assigns the following errors on direct appeal: (1) trial counsel failed to object to the trial court's illegal sentence of life without parole; (2) trial counsel

16

failed to defend Parker against double jeopardy; (3) trial counsel failed to file a motion for a new trial; and (4) trial counsel failed to raise the issue of competency before the trial court.

¶36.    This Court has addressed the proper procedures for reviewing claims for ineffective assistance of counsel on direct appeal.  *See* ***Read v. State***, 430 So. 2d 832, 841-842 (Miss. 1983).  Generally, "ineffective assistance claims are more appropriately brought during post-conviction proceedings."  ***Archer v. State***, 986 So. 2d 951, 955 (Miss. 2008).   "This is because on direct appeal the Court is limited to the trial court record in its review of the claim."  ***Id.***  Where the record lacks sufficient evidence to adequately address the claim, this Court should deny relief, preserving the defendant's right to argue the issue through a post-conviction-relief petition.  ***Id.*** (citing ***Wilcher v. State***, 863 So. 2d 776, 825 (Miss. 2003)). This Court may, however, address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record.  ***Id.***; Miss. R. App. P. 22(b).[6] Since the facts and issues are apparent from the record, we will address the merits of Parker's claim of ineffective assistance of counsel.

¶37.    The substantive standard of review for an ineffective-assistance claim is a well-settled, two-pronged principle of law.

> In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance was deficient, and that the

---

[6] Rule 22(b) of the Mississippi Rules of Appellate Procedure provides:

Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record.  Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

17

deficiency was so substantial as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-696, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Wilcher v. State*, 479 So. 2d 710, 713 (Miss. 1985); *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984). This Court looks at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988); *Read v. State*, 430 So. 2d 832, 839 (Miss. 1983). "Judicial scrutiny of counsel's performance [is] highly deferential." *Strickland*, 466 U.S. at 689. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Carney*, 525 So. 2d at 780; *Gilliard v. State*, 462 So. 2d 710, 714 (Miss. 1985). Only where it is reasonably probable that but for the attorney's errors, the outcome of the trial would have been different, will we find that counsel's performance was deficient. *Dickey v. State*, 662 So. 2d 1106, 1109 (Miss. 1995); *Reed v. State*, 536 So. 2d 1336, 1339 (Miss. 1988).

*Holly v. State*, 716 So. 2d 979, 989 (Miss. 1998).

¶38.     Furthermore, the appellant bears "the burden of proving that counsel's performance was deficient and prejudicial." *Branch v. State*, 882 So. 2d 36, 52 (Miss. 2004) (citing *Hansen v. State*, 649 So. 2d 1256, 1258 (Miss.1994)). Additionally, there is no constitutional right to errorless counsel. *Id.*(citing *Stack v. State*, 860 So. 2d 687, 696 (Miss. 2003)); *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988); *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991) (Court held that the right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant merely has right to have competent counsel).

### A.     Failure to object to trial court's imposition of an illegal sentence.

¶39.     First, Parker argues that he was constitutionally denied effective assistance of counsel, because his trial counsel failed to object to the trial court's imposition of an illegal sentence.

Parker believes that his trial counsel should have objected to this error by the trial court, and, because he did not, that he was denied effective assistance of counsel.

¶40. Generally, the decision to make certain objections falls within the realm of trial strategy and is not grounds for a claim of ineffective assistance of counsel. *Spicer v. State*, 973 So. 2d 184, 203 (Miss. 2007). In the instant case, however, we cannot say that trial counsel's failure to object falls within the realm of trial strategy, as Parker's trial counsel should have objected to such error by the trial court.

¶41. Nevertheless, Parker fails to show on appeal how such conduct by the trial counsel prejudiced his case. Despite there being no objection by Parker's trial counsel, this Court reviewed this issue under the plain-error doctrine; we therefore direct that Parker shall be sentenced properly on remand.

### B. Failure to defend against double jeopardy.

¶42. Next, Parker argues ineffective assistance based on the trial counsel's failure to defend Parker against double jeopardy. Parker avers that he was convicted of capital murder, and that this, along with his conviction for possession of a firearm on school property, somehow implicates the Double Jeopardy Clause of the federal and state constitutions. As discussed above, we find this argument to be without merit.

¶43. The record is clear that Parker was charged with and convicted of deliberate-design murder, as evinced by the language in the indictment and the jury instructions. Therefore, Parker's possession of a firearm on school property was not a lesser-included offense, because Parker was not charged with or convicted of capital murder. Parker was charged with and convicted of three separate crimes that required different facts and different

19

elements of proof. *See* Miss. Code Ann. §§ 97-3-19, 97-3-7(2)(b) and 97-37-17 (Rev. 2006).

Thus, Parker was not subjected to double jeopardy, and failing to defend against such in this

case does not constitute deficient performance under prong one of ***Strickland***.

### C.  Failure to raise competency issue.

¶44.   Parker also argues that his trial counsel rendered ineffective assistance by failing to

raise the issue of competency at trial.  The record is devoid of any evidence to show that the

trial court had reasonable grounds to order a mental examination pursuant to Mississippi

Uniform Circuit and County Court Rule 9.06.  Because the record lacks any evidence that

would suggest Parker was incompetent, we cannot conclude that Parker's counsel acted

ineffectively under this assignment of error.  *See **Jordan v. State***, 995 So. 2d 94, 110 (Miss.

2008) (citing ***Conley v. State***, 790 So. 2d 773, 784 (Miss. 2001)); Miss. R. App. P. 28(a)(6).

### D.  Failure to Make Post-trial Motions.

¶45.   Finally, Parker argues that trial counsel rendered ineffective assistance by failing to

make a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new

trial.  In fact, the record lacks any post-trial motions except for Parker's notice of appeal.

¶46.   In ***Holland v. State***, this Court dealt with whether a lawyer's failure to make any post-

trial motions constituted ineffective assistance of counsel. ***Holland v. State***, 656 So. 2d 1192

(Miss. 1995).  The trial lawyer in ***Holland*** failed to make any post-trial motions, to move for

a directed verdict, or even to ask for a peremptory instruction. *Id.* at 1197.  On appeal, the

Court found that the lawyer's performance amounted to ineffective assistance of counsel

because the omissions (1) "deprived the trial judge of the of the opportunity to reexamine

possible errors at trial" which (2) "deprived Holland of a fair trial." *Id.* (following the *Strickland* standard).

¶47.    In *Simon v. State*, this Court distinguished *Holland* somewhat by stating that, "[I]n *Holland* this Court was concerned with the fact that the trial counsel had *completely* failed to give the trial court the opportunity to review the sufficiency of the evidence at the end of the trial." *Simon*, 857 So. 2d 668, 690 (Miss. 2003) (citing *Holland v. State*, 656 So. 2d at 1197) (emphasis added).   In *Simon*, trial counsel failed to move for a directed verdict at the close of all evidence, but did file a motion for JNOV, or, in the alternative, a new trial. *Id*. The *Simon* Court found that trial counsel's conduct did not constitute ineffective assistance of counsel. *Id*.  In the instant case, Parker moved for a directed verdict both at the close of the State's case-in-chief and again at the end of the trial.  Thus, the trial judge had two opportunities to review the legal sufficiency of the evidence, as previously discussed in Issue IV.

¶48.    We note, however, that "[I]n a criminal proceeding, motions for a directed verdict [and JNOV] challenge the legal sufficiency of the evidence supporting the guilty verdict." *Croft v. State*, 992 So. 2d 1151, 1157 (Miss. 2008).  Here, the trial court had an opportunity to review the legal sufficiency of the evidence, but did not have an opportunity to review the *weight* of the evidence, as Parker's counsel failed to file a motion for a new trial. *Stewart v. State*, 909 So. 2d 52, 56 (Miss. 2005) (citing *Sheffield v. State*, 749 So. 2d 123, 127 (Miss. 1999)) (outlining the standard of review for motions for a new trial).  Thus, if the rules from *Holland* and *Simon* are applied to this case, the failure to file a motion for a new trial constituted a deficient performance under prong one of *Strickland*, since the trial judge did

21

not have an opportunity to reconsider whether the verdict was contrary to the overwhelming weight of the evidence. However, Parker's argument must also satisfy prong two under ***Strickland***. ***Strickland v. Washington***, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

¶49. Even though the trial counsel's failure to move for a new trial constituted deficient performance, Parker fails to show how such deficiency prejudiced his case. Specifically, Parker failed to show how the filing of a motion for JNOV or, in the alternative, a new trial would have changed the outcome of the proceedings. There was no reasonable probability that the trial judge would have granted the motion for a new trial had he been afforded a second chance to review the evidence, as two eyewitnesses testified at trial to seeing Parker use a gun on school property to injure Justin Moore and to kill Jarvis Moore. The evidence in the record overwhelmingly supports the verdict. Further, Parker bears the burden of proving ineffective assistance of counsel, and without showing how trial counsel's failure to make a post-trial motion prejudiced the outcome of his case, he simply does not meet that burden. Thus, this issue is without merit.

### VI.    Whether Parker Is Entitled to Relief Based on Cumulative Error.

¶50. In this assignment of error, Parker argues individual errors occurred that, when considered cumulatively, denied him the right to a fair and impartial trial. In cases where this Court finds harmless error or error that is not reversible in and of itself, the Court has the discretion to determine on a case-by-case basis whether the errors require reversal due to the resulting cumulative prejudicial effect. ***Byrom v. State***, 863 So. 2d 836, 847 (Miss. 2003). However, if there is no "reversible error in any part, so there is no reversible error to the

22

whole." ***Duncan v. State***, 939 So. 2d 772, 784 (Miss. 2006) (citing ***McFee v. State***, 511 So. 2d 130, 139 (Miss. 1987)).

¶51.   Parker avers that the cumulative effect of the alleged errors at trial prejudiced his case and deprived him of his fundamental right to a fair trial.  The issues addressed previously, however, do not rise to the level of reversible error, either standing alone or when considered as a whole.  Therefore, this assignment of error is without merit.

**CONCLUSION**

¶52.   For the foregoing reasons, the jury convictions of murder, aggravated assault, and possession of a firearm on educational property are affirmed.  However, we vacate the sentence of life without parole for the murder conviction and remand for resentencing within the statutory guidelines.

¶53.   **COUNT I: CONVICTION OF POSSESSION OF A FIREARM ON CAMPUS AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT II: CONVICTION OF MURDER, AFFIRMED. SENTENCE OF LIFE WITHOUT PAROLE IS VACATED AND THIS CASE IS REMANDED FOR RESENTENCING AS TO COUNT II. COUNT III: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.   THE SENTENCES IMPOSED IN COUNTS I AND III OF THIS CAUSE SHALL RUN CONCURRENTLY WITH EACH OTHER AND CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR.  GRAVES, P.J., CONCURS IN RESULT ONLY.**

23