IRVING, J.,
for the Court:
¶ 1. Joel Sistrunk was convicted in the Walthall County Circuit Court of possession of at least two, but less than ten, dosage units of hydrocodone in violation of Mississippi Code Annotated section 41-29-139(c) (Rev.2009). He was sentenced, as a habitual offender, to eight years in the *559 custody of the Mississippi Department of Corrections and ordered to pay a $5,000 fine. Aggrieved, Sistrunk appeals and asserts (1) that the trial court erred in admitting a recorded statement that he made shortly after his arrest, (2) that his trial counsel was ineffective, (3) that the State committed a discovery violation, (4) that the evidence is insufficient to sustain the conviction against him, and (5) that the verdict is against the overwhelming weight of the evidence.
¶ 2. Finding no reversible error, we affirm Sistrunk’s conviction and sentence.
FACTS
¶ 8. Following a traffic stop on July 4, 2007, Sistrunk was arrested and charged with unlawful possession of hydrocodone. He was indicted in August 2007 and went to trial in October 2008.
¶ 4. Officer Tracy O’Quin with the Tyler-town Police Department testified that he received a call from the Walthall County Sheriffs Department alerting him that a possible drunk driver was operating an older model yellow truck near Highway 27. Officer O’Quin was in the area and waited for a vehicle matching that description to approach. After a couple of minutes, a vehicle matching that description came by, and Officer O’Quin began to follow it. According to Officer O’Quin, the vehicle crossed the center line, at which point Officer O’Quin activated his blue lights. After stopping the vehicle, Officer O’Quin approached the vehicle on the driver’s side. Officer O’Quin testified that he immediately recognized Sistrunk and his passenger, Bertram O’Quin,[1] and that he smelled alcohol emanating from the vehicle. Sistrunk admitted having had one or two beers. Officer O’Quin asked Sistrunk to step out of the vehicle, so he could investigate. Officer O’Quin stated that it was at that point that he noticed a small brown bottle lying on the kick panel of the truck. Officer O’Quin obtained Sistrunk’s permission to look inside the vehicle. Officer O’Quin then picked up the bottle, opened it, and found three pills inside, which he believed to be hydrocodone.[2] Officer O’Quin then took the pills to the Walthall County Sheriffs Department and contacted Agent Aubrey Hill with the Southwest Mississippi Narcotics Unit. Officer O’Quin testified that after speaking with Agent Hill, he met with Sistrunk on August 9, 2007, and obtained a recorded statement from him.
¶ 5. At the beginning of the tape, Officer O’Quin questioned Sistrunk regarding whether Sistrunk had been telling people that Officer O’Quin had planted the hydro-codone in his truck. Sistrunk denied having done so. At trial, Agent Hill was asked whether the charges were filed against Sistrunk as a result of the rumors. Agent Hill stated that the charges would have been filed anyway but that they had delayed filing them to give Sistrunk time to decide if he wanted to work as a confidential informant. Agent Hill also stated that the charges would have been filed whether Sistrunk worked as an informant or not.
¶ 6. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Sistrunk’s Recorded Statement

¶ 7. In his first issue, Sistrunk argues that the trial court erred in admitting *560 Exhibit S-l, the recorded statement that he provided to Officer O’Quin and Agent Hill. In the statement, Sistrunk made clear that he had been actively involved in the use of illegal drugs for several years. He also alluded to the fact that he had been incarcerated. Also during the statement, Officer O’Quin and Agent Hill made several attempts to convince Sistrunk to work as a confidential informant.
¶ 8. Sistrunk contends that the statement was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda, the United States Supreme Court set forth warnings that must be given in order to protect a defendant’s right against self-incrimination. Id. at 481, 86 S.Ct. 1602.
¶ 9. We note at the outset that there was no objection to the admission of Exhibit S-1, a fact that Sistrunk acknowledges. Accordingly, Sistrunk urges us to view the propriety of he exhibit’s admission under the plain-error doctrine. The Mississippi Supreme Court has held that “[u]nder the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant’s ‘fundamental, substantive right.’ ” Neal v. State, 15 So.3d 388, 403 (¶ 32) (Miss.2009) (quoting Smith v. State, 986 So.2d 290, 294 (¶ 10) (Miss.2008)).
¶ 10. Sistrunk’s attorney filed a motion in limine to exclude testimony as it related to Sistrunk’s prior convictions and past bad conduct. The trial court granted the motion and stated:
I’m granting your motion in limine. [The attorney for the State] cannot bring up prior convictions unless and until he approaches the bench, and he’s granted leave to do so. If he believes you’ve opened the door, and then at that point he’ll have — you know, he can make a contemporaneous objection if he thinks you’ve opened the door. We’ll just have to see how it plays out. But the motion is granted. There won’t be any mention of the prior convictions without first approaching the bench and obtaining a ruling. All right.
Thereafter, the statement was pre-marked as Exhibit S-l. Later, Sistrunk’s attorney agreed to allow the statement into evidence without seeking to have any portion of it redacted, even though the statement contained the very information that Sis-trunk sought to have excluded. The following exchange occurred during Officer O’Quin’s direct examination:
Q. Okay. Now, I want to ask you what happened around August 9th of 2007?
A. Okay. Do you want me to tell you, or do you want — you want me to tell you now?
Q. Yeah, I’m asking you what happened on August 9th.
A. Once I turned Mr. Sistrunk over to the narcotics officer, which was Agent Hill at the time, I’m kind of out of the loop, so to speak. Agent Hill would confer with me about what they talked about. He wouldn’t tell me everything. But Agent Hill came to me and said that—
[ATTORNEY FOR DEFENDANT]:
Object to hearsay, Your Honor.
[ATTORNEY FOR THE STATE]: Let me rephrase the question.
BY THE COURT: All right.
Q. Did the conversation that you had with Agent Hill that you were about to refer to, did that lead to a subsequent meeting with the Defendant, Joel Sistrunk?
A. Yes.
[ATTORNEY FOR THE STATE]: Your Honor, then we would offer this not to show the truth of the matter *561 asserted but for the — to show what he did next.
BY THE COURT: All right. Counsel, approach.
(FOLLOWING PROCEEDINGS HAD
AT BENCH, OUTSIDE THE HEARING OF THE JURY):
[ATTORNEY FOR THE STATE]: The truth of the matter is is that it’s pretty clear on the tape what he heard.
[ATTORNEY FOR DEFENDANT]: Yeah, I mean, I’d rather just play the tape.
[ATTORNEY FOR THE STATE]: I was just going to lead up to the tape and play the tape.
BY THE COURT: I’ll sustain the objection. I mean, I think — you establish [sic] that that’s how he got in touch with—
[ATTORNEY FOR THE STATE]: Okay.
(FOLLOWING PROCEEDINGS HAD IN COURTROOM, IN PRESENCE OF THE JURY):
DIRECT EXAMINATION CONTINUED:
Q. Based on the conversation you had ■with Agent Hill, was a tape recording of a meeting made?
A. Yes, sir, it was.
[ATTORNEY FOR THE STATE]: Okay. May I approach the witness? Your Honor, for the record, I’m handing the witness what has previously been marked and entered as State’s Exhibit No. 1.
Q. I’d ask you, if you could, Officer O’Quin, to tell the ladies and gentlemen of the jury what that is a tape recording of.
A. This is a tape of a conversation that myself, Agent Hill, and the Defendant had on August the 9th. I made the recording.
Q. Okay. And how did you make the recording?
A. I had a tape recorder on — laying [sic] on the desk.
Q. Why did you make the recording?
A. Because there had been some accusations made, and I wanted to clear them up.
Q. Okay. And that recording that you have there, is that a fair and accurate copy of the recording that was actually made?
A. Yes, it is.
[ATTORNEY FOR THE STATE]: Your Honor, at this time the State would ask to be allowed to play the recording.
BY THE COURT: You may.
(EXHIBIT S-l PLAYED).
(Emphasis added).
¶ 11. We cannot agree with Sistrunk that the failure to object falls within the realm of plain error, which would require this Court to consider the issue. Sis-trunk’s attorney not only failed to object to the introduction of the statement, but he stated that he preferred that the statement be admitted into evidence. Accordingly, we fail to see how Sistrunk can now argue that the trial court erred in admitting the statement.
¶ 12. Sistrunk also argues that the prosecutor committed prosecutorial misconduct in offering the statement into evidence because he had filed a motion in limine to prevent any evidence of his prior convictions or past bad conduct. Specifically, Sistrunk argues in his brief that:
the State committed prosecutorial misconduct in offering the Exhibit S-l in spite of the motion in limine, and, further, the trial court erred in failing to sua sponte order a mistrial, pursuant to Uniform Circuit and County Court Rule *562 3.12, due to the State’s misconduct and the extremely damaging nature of the evidence.
Sistrunk contends that allowing this evidence to come in violated Rule 404(a)(1) and (b) of the Mississippi Rules of Evidence because the probative value of the evidence was outweighed by its prejudicial effect. We disagree. But more importantly, Sistrunk fails to consider that it was his attorney who agreed to have the statement pre-marked and who later suggested that it be entered into evidence. Further, as stated, Sistrunk’s attorney did not seek to redact that portion of the tape that Sistrunk now contends was substantially prejudicial to his case. Therefore, even if we agreed with Sistrunk’s argument that the probative value of the evidence was outweighed by its prejudicial effect, he would not be able to obtain any relief, because not only did his attorney fail to object to the admission of the evidence, he urged its admission. Therefore, the issue is procedurally barred.

2. Ineffective Assistance of Counsel

¶ 13. In Read v. State, 430 So.2d 832, 841 (Miss.1983), the Mississippi Supreme Court set forth procedural rules that must be followed when a defendant raises a claim of ineffective assistance of counsel on direct appeal:
If ... [after] a review of the record, ... [an appellate court] can say that the defendant has been denied the effective assistance of counsel, the [c]ourt should also adjudge and reverse and remand for a new trial.... Assuming that the [c]ourt is unable to conclude from the record on appeal that defendant’s trial counsel was constitutionally ineffective, the [c]ourt should then proceed to decide the other issues in the case.... On the other hand, if the [c]ourt should otherwise affirm, it should do so without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings. If the [c]ourt otherwise affirms, it may nevertheless reach the merits of the ineffectiveness issue where ... the record affirmatively shows ineffectiveness of constitutional dimensions, or ... the parties stipulate that the record is adequate and the [c]ourt determines that findings of fact by a trial judge[,] able to consider the demeanor of witnesses, etc.[,] are not needed.
(Citations omitted).
¶ 14. In this issue, Sistrunk contends that he did not receive effective assistance of counsel because his attorney failed to object to the admission of the statement and failed to object to statements made by the prosecutor during his closing argument regarding Sistrunk’s prior convictions.[3] Specifically, Sistrunk argues that his attorney’s failure to object to the statement “was clearly unreasonable.” In his brief, Sistrunk opines that his attorney may have failed to object to the statements because “he was of the opinion that it was [a] good defense that the officers decided to charge [him] only because they were upset with him.”
¶ 15. To prevail on an ineffective-assistance-of-counsel claim, a defendant must show that his attorney’s performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must also show that his attorney’s *563 “representation fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. Further, in Strickland, the United States Supreme Court held that:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
Id. at 689,104 S.Ct. 2052.
¶ 16. The record before us is not adequate to determine whether Sistrunk’s attorney’s decision to allow the statement into evidence constitutes ineffective assistance of counsel, as it can be argued that Sistrunk’s attorney may have agreed to the admission of the statement with the hope that the jury would conclude that the charges against Sistrunk were filed not because he actually possessed the contraband, but because he refused to work as a confidential informant for the authorities. This theory would be somewhat consistent with the notion that Officer O’Quin planted the pills in Sistrunk’s truck, a rumor that Officer O’Quin acknowledged on the tape as having heard in the streets. Because we are unable to conclude after a thorough review of the record that Sis-trunk’s attorney was constitutionally ineffective, we refrain from addressing his claim of ineffective assistance of counsel, without prejudice to him to raise this issue in a motion for post-conviction relief should he desire to do so.

3. Discovery Violation

 ¶ 17. Sistrunk contends that he was unfairly surprised by the State’s failure to disclose during discovery that Paige Mills, a forensic scientist with the Mississippi Crime Laboratory, would testify that he possessed ten milligrams of hydroco-done. Sistrunk argues that the crime laboratory report does not indicate that Mills reached a conclusion regarding the number of milligrams of hydrocodone in the pills. We note at the outset that Sis-trunk’s attorney failed to make a contemporaneous objection at trial. It is well settled that “to preserve an issue for appeal, a contemporaneous objection must be made.” Christmas v. State, 10 So.3d 413, 421 (¶ 36) (Miss.2009) (quoting Walker v. State, 913 So.2d 198, 238 (11148) (Miss.2005)). Here, as reflected in the following colloquy, the objection was not made until after Mills had twice stated that the pills contained ten milligrams of hydrocodone:
Q. And what are those tests and analy-ses called that you performed?
A. I performed a literature reference as well as a gas chromatograph mass spectrometer test.
Q. And did those tests and' analyses enable you to form an expert opinion as to what the exhibit is or what it contains?
A. Yes.
Q. Okay. And what is that?
A. Hydrocodone and acetaminophen.
Q. Okay. And in what milligrams are those pills in?
A. The acetaminophen is 650 milligrams, and the hydrocodone is 10 milligrams.
Q. The hydrocodone is how much?
A. Ten milligrams.
*564 Following the quoted exchange, Sistrunk’s attorney asked if the attorneys could approach the bench. It was at this point that he objected. Accordingly, we find that this issue is procedurally barred.
A Sufficiency and Weight of the Evidence
¶ 18. Sistrunk filed a motion for a judgment notwithstanding the verdict or, in the alternative, a motion for a new trial. A motion for a judgment notwithstanding the verdict challenges the sufficiency of the evidence. Ivy v. State, 949 So.2d 748, 751 (¶ 14) (Miss.2007) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). On the other hand, a motion for a new trial challenges the weight of the evidence. Barfield v. State, 22 So.3d 1175, 1187 (¶ 46) (Miss.2009) (citing Wilkins v. State, 1 So.3d 850, 854 (¶ 11) (Miss.2008)).

a. Sufficiency

¶ 19. In Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), our supreme court stated that when reviewing issues regarding the sufficiency of the evidence, the relevant question is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” The Bush court also held that:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)); see also Dycus v. State, 875 So.2d 140, 164 (Miss.2004). However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70; see also Gibby v. State, 744 So.2d 244, 245 (Miss.1999).

Id.

¶20. After considering the evidence in the light most favorable to the State, we find that sufficient evidence exists to support Sistrunk’s conviction for possessing hydrocodone in violation of section 41-29-139(c), which states in part:
It is unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this article. The penalties for any violation of this subsection (c) with respect to a controlled substance classified in Schedules I, II, III, IV or V, as set out in Sections 41-29-113, 41-29-115, 41-29-117, 41-29-119 or 41-29-121, including marihuana, shall be based on dosage unit as defined herein or the weight of the controlled substance as set forth herein as appropriate:
“Dosage unit (d.u.)” means a tablet or capsule, or in the case of a liquid solution, one (1) milliliter. In the case of lysergic acid diethylamide (LSD) the term, “dosage unit” means a stamp, square, dot, microdot, tablet or capsule of a controlled substance.
*565 Pursuant to section 41-29-139(c), a tablet constitutes a dosage unit. Therefore, Sis-trunk violated the statute by possessing hydrocodone tablets for which he did not have a prescription. The record contains a letter from Sistrunk’s dentist wherein he stated that on January 8, 2007, Sistrunk “was given Amoil 500 mg 24 tablets and Lortab 5 mg 20 tablets.” The record also contains a medical expenses report that indicates that Sistrunk had been prescribed hydrocodone and 500 milligrams of amoxicillin on January 8, 2007. However, Mills testified that the officers recovered hydrocodone in the amount of ten milligrams from Sistrunk’s vehicle. The record does not contain anything that indicates that Sistrunk was prescribed ten milligrams of hydrocodone. Mississippi Code Annotated section 41-29-148(1) (Rev.2009) provides that: “It is not necessary for the state to negate any exemption in this article in any complaint, indictment or other pleading or in any trial, hearing, or other proceeding under said article. The burden of proof of any exemption or exception is upon the person claiming it.” The State met its burden of proving that Sistrunk possessed a controlled substance in violation of section 41-29-139(c). Although the testimony reveals that Sistrunk had a prescription for hydrocodone, he did not have a prescription for the ten milligrams that were found in his possession. This issue lacks merit.

b. Weight

¶ 21. It is well settled that an appellate court will not disturb a verdict unless allowing it to stand will sanction an unconscionable injustice. Bush, 895 So.2d at 844 (¶ 18). The record clearly reflects that Sistrunk possessed hydrocodone in violation of section 41-29-139, as Officer O’Quin testified that he recovered pills from Sistrunk’s truck and those pills were later determined to be hydrocodone. Further, the record establishes that the pills were not lawfully in Sistrunk’s possession. Accordingly, we find that allowing Sis-trunk’s conviction for possession of at least two, but less than ten, dosage units of hydrocodone to stand will not sanction an unconscionable injustice. There is no merit to this issue.
¶ 22. THE JUDGMENT OF THE WALTHALL COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF AT LEAST TWO, BUT LESS THAN TEN, DOSAGE UNITS OF HY-DROCODONE AND SENTENCE, AS A HABITUAL OFFENDER, OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $5,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT.

. Bertram O’Quin and Officer O’Quin are not related.

. It was determined that two of the pills were hydrocodone and one was acetaminophen.

. Sistrunk takes issue with the following statements made by the prosecutor during closing argument: "What you heard is somebody who knows more about the drug trade probably than about anyone that you can find. He knew who had dope, when they had dope, who he got marijuana from, who he done [sic] dope with, time and time again.”