IRVING, P.J.,
for the Court:
¶ 1. On April 8, 2010, Charles Harris was convicted of aggravated assault and possession of a firearm by a convicted felon. The Washington County Circuit Court sentenced him to twenty years for aggravated assault. The circuit court then imposed a ten-year sentence enhancement under Mississippi Code Annotated section 97-37-37(2) (Supp.2011) for the use or display of a firearm by a convicted felon during the commission of the aggravated assault. The circuit court also sentenced Harris to ten years for possession of a firearm by a convicted felon.[1] The ten-year sentence enhancement was to run consecutively to the sentence for aggravated assault, and the sentence for possession of a firearm by a convicted felon was to run consecutively to the ten-year sentence enhancement, all to be served, without eligibility for parole or probation, in the custody of the Mississippi Department of Corrections.
¶ 2. Feeling aggrieved, Harris appeals and argues that: (1) he received an illegal sentence; (2) the circuit court erred in limiting his cross-examination of Dr. Michael Merrell; and (3) the introduction of the specific nature of his prior convictions, despite a valid stipulation, constituted reversible error.
¶ 3. Finding no reversible error, we affirm.
FACTS
¶ 4. On May 28, 2008, Harris allegedly shot Mershelda Johnson six times. Johnson testified that on the day of the shooting, she was standing on the street when Harris drove by in his car. Johnson stopped Harris and asked if he would sell her some crack cocaine. According to Johnson, Harris said that he would and told her to get into his car so that they could drive a few blocks to avoid detection by the police. Johnson testified that Harris drove to a levee near the Lighthouse Point Casino in Greenville, Mississippi. Once there, Harris allegedly gave Johnson some crack cocaine, which she smoked. Johnson testified that she offered to pay Harris for the crack, but he requested sex *201 instead. Johnson refused, and she asked Harris to take her back to the street where he had picked her up. According to Johnson, Harris told her to get out of the car. As Johnson exited the car, she told Harris that she planned to call the police and tell them that he had drugs. Johnson also threatened to call Harris’s wife and tell her that Harris had propositioned her for sex. Johnson testified that as she started to walk away, she heard a gunshot, and the next thing she remembered was waking up in the hospital.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Illegal Sentence

¶ 6. Harris argues that the ten-year sentence imposed under section 97-37-37(2)[2] is illegal. He specifically argues that section 97-37-37(2) is inapplicable because “a greater minimum sentence [is] otherwise provided for by [another] provision of law....” Harris contends that his habitual-offender status provided for a “greater minimum sentence” because it required that he receive the maximum sentence for aggravated assault-twenty years.[2] Additionally, Harris argues that the sentence
constitutes double jeopardy because he received separate sentences for possession of a firearm by a convicted felon under Mississippi Code Annotated section 97-37-5 (Supp.2011) and for the use or display of a firearm during the commission of a felony under section 97-37-37(2).
¶ 7. Harris did not challenge the legality of his sentence at trial; therefore, he “must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred.” Parker v. State, 30 So.3d 1222, 1227 (¶ 14) (Miss.2010) (citing Walker v. State, 913 So.2d 198, 216 (¶45) (Miss.2005)). “Plain error exists where such error affects the defendant’s substantive/fundamental rights, even though no objection was made at trial.” Id. The Mississippi Supreme Court has held that the right to be free from an illegal sentence is a fundamental right. Sneed v. State, 722 So.2d 1255, 1257 (¶11) (Miss.1998). Because Harris claims that his sentence is illegal, we will review the issue under the plain-error doctrine.
¶ 8. Having determined that the legality of Harris’s sentence may be reviewed under the plain-error doctrine, we must next determine our standard of review. Underlying Harris’s challenge to the legality of his sentence is a challenge to the circuit court’s interpretation of sec *202 tion 97-37-87(2). An appellate court reviews the interpretation of statutes de novo. Gilmer v. State, 955 So.2d 829, 833 (¶ 9) (Miss.2007).
¶ 9. In Mayers v. State, 42 So.3d 33, 45 (¶ 48) (Miss.Ct.App.2010), Kirk Mayers argued that the circuit court erroneously enhanced his sentence under section 97-37-37(2). Mayers was convicted of two counts of aggravated assault on law-enforcement officers, possession of a stolen firearm, and possession of a firearm by a convicted felon. Id. at 36 (¶ 1). Mayers’s sentences for aggravated assault were enhanced under section 97-37-37(2). Id. On appeal, Mayers argued “that the statute under which his sentences for aggravated assault were enhanced [did] not apply.” Id. at 45 (¶48). This Court declined to address Mayers’s argument that section 97-37-37(2) was inapplicable. Id. Instead, we held that Mayers’s sentence was illegal because “section 97-37-37(2) did not become effective until after the crime occurred.” Id. at (¶47). Accordingly, we vacated the sentence enhancements ordered under section 97-37-37(2) and remanded the case for the purpose of resen-tencing under section 97-37-37(1),[3] which was in effect at the time of Mayers’s crimes. Id.
¶ 10. While neither this Court nor our supreme court has addressed the issue of whether a defendant sentenced as a habitual offender may also be sentenced under section 97-37-37(2), the United States Supreme Court has addressed the issue in the context of the federal firearm-enhancement statute, upon which section 97-37-37(2) is modeled. See Abbott v. United States, — U.S. -, 131 S.Ct. 18, 178 L.Ed.2d 348 (2010). In Abbott, the Court considered whether defendants who were subject to a mandatory minimum sentence under the Armed Career Criminal Act (ACCA)[4] could also be subjected to a firearm enhancement. Id. at 23. The federal firearm-enhancement statute provides:
Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
*203 (i) be sentenced to a term of imprisonment of not less than 5 years;
(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(in) the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
18 U.S.C. § 924(c)(1)(A) (Supp.2009). The defendants in Abbott argued that the mandatory minimum sentence of fifteen years that they received under the ACCA triggered the “except” clause in section 924(c)(1)(A) because the ACCA constituted “another provision of law that provided a greater minimum sentence.” Abbott, 181 S.Ct. at 23-24 (internal quotations omitted).
¶ 11. The Abbott Court disagreed and held that the “except” clause contained in section 924(c)(1)(A), applies only where the greater minimum sentence relates to conduct proscribed by section 924(c) — possession of a firearm in connection with violent crimes or drug-trafficking crimes. Id. at. 23. The Court refused to interpret the “except” clause as exempting criminals from enhanced punishment under section 924(c)(1)(A) “because they were sentenced to greater mandatory minimum prison terms for convictions on other counts charging different offenses.” Id. at 22. The Court noted that such an interpretation would lead to “sentencing anomalies”[5] and would undercut the primary objective of section 924(c) — “throttling] criminal use of guns.” Id. at 27-28.
¶ 12. We see no reason for a different interpretation of our firearm-enhancement statute, which contains an almost identical “except” clause. Consequently, Harris cannot argue that section 97-37-37(2) does not apply because “a greater minimum sentence” was provided for by way of the habitual-offender statute. To hold otherwise would thwart the purpose of the firearm-enhancement statute and result in the same kind of “sentencing anomalies” of which Abbott Court warned.
¶ 13. For example, suppose that two habitual offenders commit aggravated assault; however, one uses his fists and the other uses a firearm. If we were to accept Harris’s interpretation of the “except” clause found in section 97-37-37(2), the habitual offender who committed aggravated assault with a firearm would receive the same twenty-year sentence as the habitual offender who used only his fists. Given that the overarching purpose of sentence enhancements is deterrence, we are certain that our Legislature did not intend such a result. Accordingly, we hold that the circuit court did not err in applying the firearm enhancement where Harris was also subject to an enhanced sentence as a habitual offender. This issue is without merit.
¶ 14. Harris’s argument that the ten-year sentence imposed under section 97-37-37(2) constitutes double jeopardy is also without merit. This Court has. previously rejected the argument that section 97-37-37(2), when applied to a charge of aggravated assault, constitutes double jeopardy. Mayers, 42 So.3d at 45 (¶ 50).

2. Expert Testimony

¶ 15. Harris argues that the circuit court erred in refusing to allow Dr. *204 Merrell, the emergency-room physician who treated Johnson, to testify regarding the common side effects of the drugs found in Johnson’s system.[6] “Questions concerning the qualification of a person to testify as an expert are committed to the sound discretion of the trial court and [an appellate court] does not reverse such decisions absent a showing that such discretion has been abused and the witness is clearly not qualified.” Simmons v. State, 722 So.2d 666, 672-73 (¶ 44) (Miss.1998) (citing Cooper v. State, 639 So.2d 1320, 1325 (Miss.1994)). A witness is qualified to give expert testimony when “the witness possesses peculiar knowledge or information regarding relevant subject matter that is not possessed by the layman.” Id. at 673 (¶ 44) (citing May v. State, 524 So.2d 957, 963 (Miss.1988)).
¶ 16. We hold that the circuit court erred in refusing to allow Dr. Merrell’s testimony regarding the common side effects of cocaine, benzodiazepines, and marijuana. Dr. Merrell testified that he had three years of experience as an emergency-room physician and had treated between two hundred and three hundred patients. Additionally, Dr. Merrell testified that he was familiar with the common side effects of cocaine, benzodiazepines, and marijuana. Based on his medical training and experience, Dr. Merrell was qualified to testify regarding the common side effects of the drugs found in Johnson’s system. Furthermore, this Court has held that an emergency-room physician was qualified to testify regarding a victim’s level of intoxication and its effect on her ability to recall events. McGriggs v. State, 987 So.2d 455, 459 (¶12) (Miss.Ct.App.2008).
¶ 17. The State argues that even if the circuit court erred in limiting Dr. Merrell’s testimony, the error was harmless. An error is harmless where “the same result would have been reached had it not existed.” Pitchford v. State, 45 So.3d 216, 235 (¶71) (Miss.2010) (quoting Tate v. State, 912 So.2d 919, 926 (¶ 18) (Miss.2005)). Following the circuit court’s exclusion of Dr. Merrell’s testimony regarding the common side effects of the drugs found in Johnson’s system, Harris’s defense counsel made the following proffer outside the presence of the jury:
[DEFENSE COUNSEL]: Dr. Merrell ... would you agree that the most common side effect of the Ben-zo[diazepines] include[s] dizziness?
[DR. MERRELL]: That is one possible side effect, yes.
[DEFENSE COUNSEL]: Drowsiness?
[DR. MERRELL]: Yes.
[DEFENSE COUNSEL]: Decreased alertness?
[DR. MERRELL]: Yes.
[DEFENSE COUNSEL]: Blurry vision?
[DR. MERRELL]: Not usuallyt,] but it’s possible.
[DEFENSE COUNSEL]: Decreased concentration?
[DR. MERRELL]: Yes.
[DEFENSE COUNSEL]: Would you agree that one of the common side effects of cocaine is decreased alertness?
[DR. MERRELL]: I would not agree with that.
[[Image here]]
[DEFENSE COUNSEL]: And what are the side effects of cocaine?
[DR. MERRELL]: Cocaine can actually increase alertness but decrease your *205 ability to make proper judgments on what you are perceiving. It speeds up your metabolism, it increases blood pressure and heart rate, and again [it] can change the way you perceive things. Paranoia is very common.
[DEFENSE COUNSEL]: And so it can affect the way you perceive it?
[DR. MERRELL]: That’s correct.
[DEFENSE COUNSEL]: Would it affect your ability to identify, to make an identification?
[DR. MERRELL]: The cocaine, I don’t think would.
[DEFENSE COUNSEL]: What are the common side effects of marijuana?
[DR. MERRELL]: Common side effects of marijuana are very similar to the Benzodiazepines. It is a halluci-nogenicf,] so it can also change your perception of events and what you are seeing.
[DEFENSE COUNSEL]: Now, Doctor ... what are the common side effects of a combination of all three, [Johnson] tested positive for all three of these.
[DR. MERRELL]: The problem with that is that I cannot say due to a trauma panel if any of those are being actively used at that time. It’s not— it’s possible that all three could be positive without her having taken any of those on that same day, and she may never have taken them all at the same time.
¶ 18. We fail to see how the proffered testimony would have changed the outcome of Harris’s case. While Dr. Merrell testified that cocaine use can affect the way a person perceives things, he also testified that it would not impair a person’s ability to “make an identification.” Furthermore, Dr. Merrell explained that a positive drug test, or “trauma panel,” reveals nothing about when and in what combination the drugs were taken.
¶ 19. Johnson admitted in her testimony that she had smoked crack cocaine while she was in the car with Harris. However, based on Dr. Merrell’s proffered testimony, Johnson’s cocaine use would not have impaired her ability to identify the person who shot her. On cross-examination, Johnson admitted to smoking marijuana on the day of the shooting, but she denied smoking marijuana while she was in the car with Harris. Dr. Merrell testified that marijuana use can impact perception. However, it is unclear from the record whether Johnson was under the influence of marijuana at the time of the shooting. Even if she was, Dr. Merrell did not testify in his proffer as to the side effects of the combination of marijuana and cocaine. Because we do not find that the proffered testimony would have changed the outcome in Harris’s case, any error in limiting Dr. Merrell’s testimony was harmless. This issue is without merit.

3. Introduction of Prior Convictions

¶ 20. Harris argues that the circuit court erred in admitting evidence of his prior convictions despite a valid stipulation. At trial, the State introduced the audio-recorded statement that Harris gave to the police where he admitted to his prior convictions for possession of a firearm by a convicted felon and possession of marijuana with intent to distribute. Prior to admitting the tape, the circuit court asked Harris if he had any objection. Harris stated that he did not. However, when the State played the tape for the jury, Harris objected to the portion related to his prior convictions.
¶ 21. In Sistrunk v. State, 48 So.3d 557, 560 (¶ 10) (Miss Ct.App.2010), Joel Sis-trunk’s attorney filed a motion in limine to *206 exclude testimony related to Sistrunk’s prior convictions. The circuit court granted the motion; however, when the State sought to introduce Sistrunk’s police statement that included a discussion of his prior convictions, his attorney failed to object to its admission. Id. at 560-61 (¶ 10). This Court held that the issue of whether the circuit court erred in admitting the statement was procedurally barred because Sis-trunk’s attorney failed to object to its admission. Id. at 561 (¶ 11).
¶22. Harris’s attorney initially stated that he had no objection to Harris’s police statement being played at trial. Harris’s attorney later objected to the portion of the tape related to Harris’s prior convictions after it had been heard by the jury. While the State agreed to stipulate that Harris was a convicted felon, the plain language of the stipulation did not preclude the State from presenting evidence of Harris’s prior convictions.[7]
¶ 28. Because Harris’s attorney failed to object to the admission of the statement until after the jury had heard the portion of the tape containing Harris’s prior convictions, Harris’s argument that the circuit court erred in admitting the statement is procedurally barred. Procedural bar notwithstanding, the State never agreed to refrain from presenting evidence regarding the nature of Harris’s prior convictions. Furthermore, any prejudice stemming from the admission of the taped statement was alleviated by the circuit court’s granting a limiting instruction.[8]
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT, AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS AND OF TEN YEARS AS AN ENHANCED PENALTY PURSUANT TO MISSISSIPPI CODE ANNOTATED SECTION 97-87-37(2) (SUPP.2011), WITH THE TEN-YEARS’ ENHANCED PENALTY TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I; AND COUNT II, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE AS A HABITUAL OFFENDER OF TEN YEARS, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE TEN YEARS’ ENHANCED PENALTY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., GRIFFIS, P.J., MYERS, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR. BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. As a habitual offender, Harris was subject to the maximum punishment for each crime, and he is not eligible for parole or probation. Harris had previously been convicted of possession of a firearm by a convicted felon in 2002 and possession of marijuana with intent in 1999.

. The firearm enhancement in section 97-37-37(2) provides:
Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any convicted felon who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of ten (10) years, to run consecutively, not concurrently, which sentence shall not be reduced or suspended.

. Mississippi Code Annotated section 99-19-81 (Rev.2007) provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

. Section 97-37-37(1) provides:
Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.

. Title 18, Section 924(e) of the United States Code (Supp.2009) provides:
In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).
Section 922(g) proscribes the possession of a firearm by certain classes of people, including convicted felons.

. The Court offered the following example: Suppose ... that a career criminal sold drugs together with a first-time offender, and both brandished firearms in the process. The first-time offender, lacking a felon-in-possession conviction, would serve a seven-year [section] 924(c) sentence on top of a ten-year drug sentence, for a total of [seventeen] years. But the career criminal's ACCA sentence would preempt the [section] 924(c) sentence; he would serve only [fifteen] years.

. The lab tests performed on Johnson the day of the shooting revealed the presence of cocaine, benzodiazepines, and marijuana in her system.

. The stipulation signed by Harris's attorney and the State reads as follows:
“The parties stipulate and agree that Charles Harris is a convicted felon."

. Jury Instruction 7 states in pertinent part: The Court instructs the Jury that the Defendant has stipulated or admitted that he is a convicted felon, which is one element of Count II, Felon in Possession of a Deadly Weapon, of which he is currently charged. The Court instructs the jury that this prior felony conviction may only be used for the limited and sole purpose of proving the prior felony conviction element of Count II, Felon in Possession of a Deadly Weapon.