## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2012-KA-00258-SCT

*LISA SANDLIN a/k/a LISA A. SANDLIN a/k/a LISA BABLER a/k/a LISA HUSKY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2011 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/10/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Lisa Sandlin was convicted of murder for the death of her stepson Kirk Sandlin and

sentenced to a term of life in prison.  Lisa appeals, raising two issues:

> I.  Whether the trial court erred by allowing Lisa's husband Sammy Sandlin
> to testify for the State.
>
> II.  Whether Lisa received ineffective assistance of counsel.

¶2.     We find that Issue I is barred from review.  With regard to Lisa's ineffective-

assistance-of-counsel claims, the record clearly establishes that three issues – statements

made in opening argument, statements made in closing argument, and Lisa's motion for directed verdict – are without merit. Thus, we affirm Lisa's conviction and sentence on these issues. But the record is insufficient to consider two of her ineffective-assistance-of-counsel claims – Sammy's testimony and a 911 call – on direct appeal. Thus, we dismiss these two claims without prejudice to Lisa's right to bring these claims later in a properly filed motion for post-conviction relief.

## FACTS AND PROCEDURAL HISTORY

¶3.     Sammy and Lisa Sandlin married in 1998. Both had children from previous relationships – Kirk Sandlin (Sammy's son) and Jesse Huskey[1] (Lisa's son). Sammy, Jesse, and Lisa testified that, early on, the entire family got along very well. Later, Kirk developed a drug habit which negatively affected the family relationship. Kirk stole frequently from Sammy, Lisa, and Jesse. Jesse said that Kirk was an intimidating person, and he was paranoid, distrustful, aggressive, and quick-tempered. Kirk and Lisa's relationship had become especially volatile. Jesse knew that Lisa was afraid of Kirk. While Jesse had never witnessed a physical altercation between Lisa and Kirk, Lisa had shown Jesse bruises she claimed were inflicted by Kirk. Sammy stated that Lisa previously had called the police on Kirk, but he thought her calls were unnecessary and urged her not to call the police again.

¶4.     On September 22, 2010, in Saltillo, Mississippi, Kirk and Lisa were involved in a verbal altercation, which ended in Lisa shooting Kirk. Dr. Amy McMaster, a forensic

---

[1]With regard to Jesse's last name and Lisa's alias, discrepancies exist in the record as to its spelling. Three variations exist: Huskey, Husky, and Huskie.

pathologist, testified that the cause of death was a gunshot wound to the torso and labeled the death a homicide.[2]

¶5.    John Russell Sandlin, Sammy's brother and Kirk's uncle, was not present when Kirk was shot.  But John testified to events that had transpired the day before the incident. According to John, he and Kirk were working on a car at Sammy's barn.  The barn was at least fifty to sixty yards away from the house.  At one point, Lisa came on the porch and yelled, "If ya'll don't get the hell out from here, I'm fixing to start shooting."  John testified that they had not exchanged words with Lisa prior to her statement, and they left the home soon thereafter.  Lisa denied that she made the statement.

¶6.    Sammy was present during the shooting and testified regarding what took place.  That night, Lisa and Sammy's mother were sitting on the patio by the fire pit.  Kirk came by the house to ask Sammy to help him get a city-maintenance job.  Sammy expressed his hesitation to help Kirk, reminding Kirk that he had "messed up" previous job opportunities.  According to Sammy, Lisa chimed in, stating, "Kirk, you are not going to do nothing but mooch off . . . your daddy."  Sammy stated that Kirk called Lisa a bitch and continued to curse at her. Lisa told Kirk to get off the property.  Although Sammy had not mentioned this to police before, at trial he testified that Kirk stood up, flexed his muscles, and told Sammy, "Daddy, if you don't get her away from me, I'm going to kill her."  Sammy told Lisa to go into the house "and just hush."

---

[2]Dr. McMaster also testified that Kirk's toxicology test was positive for methamphetamine, amphetamine, diazepam, and nordiazepam.

3

¶7. Kirk stayed and talked to Sammy a few more minutes before heading away. Then, Kirk returned and said, "Daddy, I want to ask you something else." Kirk walked back toward the house and stopped in the breezeway at least six to eight feet away from the door. Sammy heard Kirk say, "Well, what are you going to do with that gun, bitch, shoot me?" Sammy could not see Lisa in the doorway, but he saw the gun barrel. Sammy ran to Kirk, but he did not get there in time. Sammy caught Kirk before he hit the ground and called 911.

¶8. According to Sammy, he normally kept the shotgun unloaded. All of the shells had been used except for two, which he kept in Lisa's jewelry box. After the shooting, only one shell remained. Lisa had reminded Sammy that either Kirk or Jesse had used the shotgun last, and perhaps they had left it loaded. After that reminder, Sammy recalled loading the shotgun himself to shoot a snake, and he testified that he had probably left the shell in the gun. As far as Sammy knew, Lisa never had touched the shotgun. Sammy acknowledged that Kirk and Lisa had not gotten along for some time. But he did not remember giving a written statement to police stating that Lisa had talked about shooting or killing Kirk for a long time.

¶9. Lisa testified in her own defense. She described her relationship with Kirk as pleasant until his drug addiction. Lisa testified that Kirk's attitude had changed, and he had become violent. Lisa gave her account of the night's events. According to Lisa, Kirk stated that "somebody had to work around here." Lisa told Kirk that Sammy worked hard. In response, Kirk told Lisa to "shut the f– up." Lisa snapped back, "You are not going to work. You can't even pass the drug test, Kirk."

4

¶10. Kirk was upset, and he cursed and spat in Lisa's face. Sammy told Lisa to go inside, and she did. Lisa stated that when she went inside the house, she grabbed the shot gun to intimidate Kirk. She walked to the door with the gun. Kirk saw her and asked, "What are you going to do with that, shoot me?" Lisa declared, "I will," and Kirk responded, "Go ahead." Lisa stated that she cocked the gun and pulled the trigger, and the shotgun made a loud noise. Immediately afterwards, Lisa called her father and informed him that he might not see her for a while because she had shot Kirk. Lisa stated that when the police arrived, she took full responsibility for her actions and cooperated with the police.

¶11. At approximately 7:35 p.m., Kerry Gaddy, a sergeant with the Lee County Sheriff's Department, responded to Sammy's 911 call. Upon arrival, Sergeant Gaddy found Kirk lying on the ground and saw Sammy giving Kirk aid. At the time, Kirk was alive. Sammy informed Sergeant Gaddy that Kirk, his son, had been shot by Lisa, his wife, and that Lisa was inside the home. Sergeant Gaddy called Lisa's name and asked her to come out with her hands up. According to Sergeant Gaddy, Lisa seemed agitated and upset but not frightened. He did not notice any signs of a struggle. As Lisa emerged, Sergeant Gaddy said that she yelled, "I shot the motherfucker. I was tired of his shit." Sergeant Gaddy secured the weapon – a shotgun – which had a spent shell in it.

¶12. Jason Putt, an officer with the Lee County Sheriff's Department, had arrived at the residence. He placed Lisa under arrest, read her the ***Miranda***[3] rights, and placed her in his patrol car. Putt opined that Lisa showed no remorse and stated that she did not inquire about Kirk's condition. Chief Investigator Scott Reedy arrived at the scene and questioned Lisa

---

[3]***Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

regarding the incident. According to Investigator Reedy, Lisa said that she and Kirk had gotten into a verbal altercation outside the home. She denied that the altercation was physical. Lisa admitted to Investigator Reedy that she had shot Kirk, but she claimed that the gun had gone off by accident. Lisa did not recall loading the shotgun. During questioning, Lisa told Investigator Reedy "she was tired of [Kirk's] shit, [a]nd I shot him." Investigator Reedy testified that Lisa, during the first interview, did not mention anything about acting in self defense.

¶13. Investigator Reedy interviewed Lisa a second time on September 23, 2010. The recorded interview was played for the jury. During the interview, Investigator Reedy informed Lisa that Kirk had died from his wounds. According to Investigator Reedy, Lisa had added facts to her statement. She told him about domestic-violence reports she previously had filed against Kirk. She claimed Kirk had run toward her before she had shot him. Investigator Reedy also testified regarding the crime scene. He stated that Kirk was lying on a rug which was at least six to eight feet away from the door. He found an empty shell box sitting near an aquarium in Lisa's bedroom. Investigator Reedy also had noticed an open dresser drawer in the bedroom. He said that the drawer was opened to the point that it was falling out, and there was an empty spot in the drawer. Lisa told Investigator Reedy that she did not know where the shell box came from and claimed she could have moved it while cleaning. At trial, Sammy testified that he had removed the empty shell box from the dresser drawer. Investigator Reedy also found a gin bottle in the kitchen. Lisa told him that she and Sammy had been drinking that night.

6

¶14. Lisa denied being intoxicated that night. She also denied telling the officers that she had "shot the motherfucker." Instead, Lisa stated that she had explained to the officers how Kirk was cursing at her. Lisa claimed she did not load the gun, she did not think the gun was loaded, and she had used the gun only to intimidate Kirk. She also stated that she had not shot a gun in more than thirty years. Lisa testified that Kirk was "very poofed up, cocky" during their exchange. She stated that she was afraid of Kirk, but Sammy had allowed Kirk to come and go at the house as he pleased.

¶15. At the conclusion of the evidence, the jury returned a verdict, finding Lisa guilty of murder. The trial court sentenced Lisa to a term of life in prison. Aggrieved, Lisa timely filed her notice of appeal. Additional facts will be discussed below as they relate to each issue.

## ANALYSIS

### I. Sammy's Testimony

¶16. Lisa argues that, under Mississippi Code Section 13-1-5, the trial court erred by permitting Sammy, her husband, to testify against her. Section 13-1-5[4] was superceded by

_____

[4]Mississippi Code Section 13-1-5 provides that:

Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.

Mississippi Rule of Evidence 601(a), but both contain similar language. M.R.E. 601, cmt.;

***Stevens v. State***, 806 So. 2d 1031, 1048-49 (¶77) (Miss. 2001). Rule 601(a) provides that:

> (a) In all instances where one spouse is a party litigant the other spouse shall not be competent as a witness without the consent of both, except as provided in Rule 601(a)(1) or Rule 601(a)(2):
>
> > (1) Husbands and wives may be introduced by each other in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them;
> >
> > (2) Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children.

M.R.E. 601(a).

¶17.     Lisa maintains that she did not consent to Sammy's testimony, and the trial court failed to determine whether she and Sammy understood the law on competency. Thus, she contends that Sammy's testimony was inadmissible, highly prejudicial, and plain error, which requires reversal. The State argues that the claim is waived because Lisa failed to lodge a contemporaneous objection at trial.

¶18.     Because Lisa failed to raise an objection to Sammy's testimony, we find that Lisa's claim is barred from review. In ***Brewer v. State***, the Court found a wife's competency to testify against her husband was waived where the husband failed to object to the wife's testimony. ***Brewer v. State***, 233 So. 2d 779, 780-81 (Miss. 1970). The statute evaluated in ***Brewer*** is similar to today's Rule 601(a). *See **id**.* The Court stated that:

---

Miss. Code Ann. § 13-1-5 (Rev. 2012).

It has been held in a number of cases that a wife is not competent to testify against her husband in a charge of crime, unless it is a personal assault upon her or an offense against her person. The words in the statute, section 1528, Code 1930, are: "Husband and wife may be introduced by each other as witness in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both."

. . .

Whenever witnesses are offered in court who are incompetent, objection as to their competency should be made before the reception of the evidence, and certainly before the conclusion of the evidence for the state, so that the trial judge might decide that question at once. If a party does not object to the competency of a witness when presented, such objection is waived if the party knew of the facts constituting this incompetency at the time the evidence was offered. If he does not then object he, in effect, consents, and he will not be permitted to experiment with the evidence and see whether it is helpful or hurtful to him, and then later to move to have such evidence excluded, provided the facts constituting incompetency were then known.

*Id*. (citations omitted).

¶19. The Court has found reversible error where the defendant objected to his spouse's testimony, and the trial court overruled the objection. *See **Wallace v. State***, 254 Miss. 944, 183 So. 2d 525 (Miss. 1966). But in Lisa's case, defense counsel failed to lodge an objection to Sammy's testimony at trial. The trial court cannot be held in error on issues not presented to it for review. ***Milano v. State***, 790 So. 2d 179, 189 (¶47) (Miss. 2001). Thus, under ***Brewer***, Lisa's claim is barred from review.

## II. Ineffective Assistance of Counsel

¶20. Because the Court is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief. ***Parker v.***

9

***State***, 30 So. 3d 1222, 1232 (¶36) (Miss. 2010). However, the Court may address the claims on direct appeal if the issues are based on facts fully apparent from the record. ***Id***. If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief. ***Id***.

¶21. Claims of ineffective assistance of counsel are reviewed under the standard set forth in ***Strickland v. Washington***, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). ***Parker***, 30 So. 3d at 1233 (¶37) (citing ***Holly v. State***, 716 So. 2d 979, 989 (Miss. 1998)). A strong but rebuttable presumption exists that trial counsel was competent and performed within the wide range of reasonable conduct expected from counsel. ***Parker***, 30 So. 3d at 1233 (¶37). To rebut this presumption, the defendant must show that "his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." ***Id***. "Only where it is reasonably probable that but for the attorney's errors, the outcome of the trial would have been different, will we find that counsel's performance was deficient." ***Id***.

### 1. Sammy's Testimony

¶22. First, Lisa claims her defense counsel was ineffective because he failed to object to Sammy's testimony. Lisa asserts that allowing Sammy to testify was error, that it deprived her of a fair trial, and that it prevented her from invoking the ***Weathersby*** rule. *See* ***Weathersby v. State***, 165 Miss. 207, 147 So. 481 (1933). The ***Weathersby*** rule provides that:

> [W]here the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or

10

witnesses for the state, or by the physical facts or by the facts of common knowledge.

*Id*. at 482. Without Sammy's testimony, Lisa claims she was the only eyewitness to the incident and could have asserted *Weathersby*.

¶23. On direct appeal, the Court does not consider ineffective-assistance-of-counsel claims unless the record contains sufficient evidence to evaluate the claim. M.R.A.P. 22(b). The record shows only that, at one point, defense counsel listed Sammy as a potential witness. However, defense counsel did not call Sammy at trial; the State called him. Also, no discussion is in the record regarding Sammy's and Lisa's consent to Sammy's testimony. Many unanswered questions surround this issue. The Court does not have sufficient information to review whether defense counsel was ineffective by failing to object to Sammy's testimony. Thus, we dismiss this claim without prejudice, and Lisa may bring this claim later in a properly filed motion for post-conviction relief. *See Knight v. State*, 72 So. 3d 1056, 1062 (¶22) (Miss. 2011).

**2. 911 Call**

¶24. Lisa claims defense counsel was ineffective because he conceded the exclusion of evidence – a 911 recording. The State presented a motion in limine to exclude Lisa's 2009 911 call against Kirk. The State argued that the evidence was inflammatory and irrelevant. Defense counsel agreed. The trial court granted the State's motion in limine.

¶25. The transcript concerning the motion in limine is rather brief, and the recording is not included in the record. Thus, the substance of the 911 call is a mystery. The record is insufficient for the Court to consider the issue on direct appeal. *See Knight*, 72 So. 3d at

1062 (¶22). Accordingly, we dismiss this issue without prejudice, and Lisa may bring the claim later in a properly filed motion for post-conviction relief.

### 3. Opening Statement

¶26. Lisa contends that the prosecutor made improper comments during his opening statement. Attorneys are granted wide latitude in making opening and closing statements. ***Dampier v. State***, 973 So. 2d 221, 235 (¶39) (Miss. 2008). The Court must determine "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." ***Id***. (quoting ***Sheppard v. State***, 777 So. 2d 659, 661 (¶7) (Miss. 2000)).

¶27. The prosecutor's statement, of which Lisa complains, reads:

> She gets the shotgun. She brings it out. She comes to the door. Points the gun at Kirk Sandlin. She pulls the hammer back. She pulls the trigger. She shoots him in the abdomen. He falls down. He dies. That is murder, and I would have to say this is one of the simplest, if not the simplest[,] murder cases that I have ever tried, and I have tried several.

According to Lisa, the statement improperly suggested that she must be found guilty of murder. Defense counsel failed to raise an objection. Failure to raise an objection to a prosecutor's statements made at trial procedurally bars the statements from appellate review. ***Edwards v. State***, 737 So. 2d 275, 299 (¶50) (Miss. 1999). Lisa argues that her defense counsel was ineffective for failing to object to the prosecutor's statement.

¶28. The State argues that the prosecutor's statement and defense counsel's failure to object did not amount to ineffective assistance of counsel. The State contends that Lisa has failed to show how the trial's outcome would have been different if the statement had not

been made or if her counsel had objected to it. Alternatively, if the Court finds error, the State argues that error is harmless.

¶29. Lisa cites authority for the proposition that a prosecutor is barred from making improper comments to the jury, and a prosecutor is barred from comment on counsel opposite. *See **Griffin v. State***, 557 So. 2d 542 (Miss. 1990); ***Edwards***, 737 So. 2d 275. But Lisa does not cite a case in which similar comments were found to be improper and reversible error. Lisa has failed to show how the prosecutor's comment prejudiced her. And, given the wide latitude afforded attorneys during opening statements, we find no merit in Lisa's claim.

### 4. Motion for Directed Verdict

¶30. Next, Lisa claims defense counsel was ineffective because the trial court had to prompt him to move for a directed verdict after the State rested.

¶31. The previous day, the State called a witness, which the defense challenged. The trial court took the objection under advisement overnight. The next morning, the trial court sustained the defense's objection to the witness's testimony. The State rested its case. Then, the following exchange occurred between the trial court and defense counsel:

> DEFENSE: Defense is ready to proceed with its opening remarks, Your Honor.
>
> COURT: Okay. Do you have the . . . a motion for directed verdict?
>
> DEFENSE: Your Honor, I do have a motion for a directed verdict, and I appreciate the Court's prompting. I was caught somewhat off guard expecting witnesses this morning. At this time the Defendant would move for a directed verdict. The State has failed to prove malice, as is required and shown in the indictment.

COURT: All right. There is at least circumstantial evidence from which the jury could find or infer malice. The motion is denied.

¶32. Lisa has failed to cite any authority to support her position and has failed to show how her counsel's forgetfulness prejudiced her defense. Regardless of prompting, defense counsel ultimately moved for a directed verdict, and it was denied. Thus, we find no merit in Lisa's claim.

### 5. Closing Statement

¶33. Last, Lisa argues that the prosecutor included in his closing argument facts not in evidence. In closing argument, the prosecutor stated, "What did she do? Went back in the house and called her daddy, and said, You ain't going to see me for a while. I'm going to have to go away. I just killed Kirk."

¶34. However, the record belies Lisa's claim. On direct examination, Lisa testified regarding the conversation she had with her father. She stated, "I went in my bedroom, and I called my father, and he wasn't home, and I left him a message, and I said, Daddy, I don't think I will be seeing you for a while. I just shot Kirk." Contrary to Lisa's belief on appeal, the facts were in evidence. We find no error.

### CONCLUSION

¶35. Because Lisa failed to object to Sammy's testimony at trial, the competency issue is procedurally barred from review. Out of five ineffective-assistance-of-counsel claims, three are without merit – the opening statement, the motion for directed verdict, and the closing statement. Thus, we affirm Lisa's conviction and sentence. The record, however, is insufficient to address two of Lisa's ineffective-assistance-of-counsel claims – Sammy's

14

testimony and the 911 call – on direct appeal.  Thus, these two issues are dismissed without prejudice for Lisa to raise later in a properly filed motion for post-conviction relief.

¶36.    **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**