# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00485-COA

**DANIEL CHASE GREGG**            **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**            **APPELLEE**

DATE OF JUDGMENT:      05/09/2022
TRIAL JUDGE:      HON. CALEB ELIAS MAY
COURT FROM WHICH APPEALED:      NEWTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
     BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
     BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:      STEVEN SIMEON KILGORE
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:      AFFIRMED - 09/26/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. Following a jury trial in the Newton County Circuit Court, Daniel Gregg was convicted of possession of twenty or more dosage units but less than forty dosage units of amphetamine (Count I) and possession of less than thirty grams of marijuana (Count II). The circuit court sentenced Gregg to serve a term of ten years in the custody of the Department of Corrections for Count I and a $250 fine for Count II. On appeal, Gregg raises only one issue. He argues that his trial counsel provided ineffective assistance by not subpoenaing a witness or witnesses who could have established that Gregg had a prescription for the amphetamine. However, Gregg's ineffective assistance claim must be dismissed without

prejudice because the record is insufficient to address the issue on direct appeal. Therefore, Gregg's convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2. In the early morning hours of February 19, 2020, Deputy Barry Roberts of the Newton County Sheriff's Department observed Gregg drive his car on the wrong side of the road and "run off the road several times" on Lazy Acres Road near Chunky, Mississippi. Roberts initiated a traffic stop and detected a "strong odor of marijuana" as he approached Gregg's car. Roberts instructed Gregg to exit the car and asked Gregg "if there was any marijuana on him or . . . in the vehicle." Gregg initially stated that he did not have any marijuana, but as Roberts began to pat him down for weapons, Gregg stated, "Man, to tell you the truth, I got marijuana in my left pocket." Roberts then cuffed Gregg, retrieved a small bag of marijuana from Gregg's pocket,[1] and read Gregg his *Miranda*[2] rights.

¶3. Roberts searched Gregg's car and found two pill bottles in the center console. One bottle had a Xanax label with Gregg's name on it. The other bottle was unmarked and contained a total of twenty-one blue and green pills. Gregg told Roberts that the pills in the unmarked bottle were Adderall, which the Mississippi Forensics Laboratory later confirmed. Roberts asked Gregg if he had a prescription for Adderall, and Gregg said he did not. Gregg said that he had a prescription for Adderall "two to four years" earlier but could no longer get a prescription "because it was illegal for the doctor to prescribe Adderall and Xanax at

---

[1] The bag contained approximately ten grams of marijuana.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

the same time." He "said he bought [the Adderall] from somebody in Meridian."

¶4. Gregg was indicted for possession of twenty or more dosage units but less than forty dosage units of amphetamine (Count I) and possession of less than thirty grams of marijuana (Count II). He was not charged with possession of Xanax because it was in a prescription bottle with his name on it. Prior to trial, Gregg never produced a prescription for Adderall.

¶5. On the morning of trial, Gregg's lawyer, Wade White, requested a continuance, stating as follows:

MR. WHITE: Mr. Gregg also requests a continuance to the next term of court . . . . He would want his mother to testify . . . . And she's not here . . . .

THE COURT: Is there a reason why she wasn't called and subpoenaed?

MR. WHITE: He said she teaches class at [the University of West Alabama], and he said we didn't have enough time to prepare, Your Honor, is Mr. Gregg's position.

THE COURT: . . . [I]s there any kind of specific defense or any specific -- other than your mother not being here to testify?

MR. WHITE: I think she would testify that he's had a history of usage of Adderall throughout his adolescence and adult years[.]

The court denied the request for a continuance, finding that Gregg had not shown "substantial enough grounds to continue the case."

¶6. A few minutes later, the parties reconvened in the judge's chambers for jury selection, and the following exchange occurred:

THE COURT: . . . Before we begin jury selection, any preliminary matters . . . ?

. . . .

3

MR. WHITE:          You have to speak through me.  What do you want?

(Mr. White was speaking with his client.)

MR. WHITE:          Your Honor, we would renew our request for a continuance for purposes of procuring the testimony of Janice --

MR. GREGG:          Janie Gregg -- Dr. Janie Gregg.

MR. WHITE:          -- Dr. Janie Gregg, Your Honor.

MR. GREGG:          And also --

THE COURT:          Is that his mother?

MR. WHITE:          That's his mother, Your Honor.

MR. GREGG:          And my doctor --

MR. WHITE:          And his doctor, Your Honor.

MR. GREGG:          -- to prove -- to prove and to show the jury that I was -- actually my prescription.

MR. WHITE:          You really need to talk to me.  He wants to subpoena the doctor that a prescription was found at the time . . . .

MR. GREGG:          I apologize.

The assistant district attorney responded that Gregg and his mother had known about his trial date for weeks, that Gregg's mother was present on his last court date, and that in the seven months since Gregg's indictment, he had never produced a prescription for Adderall.[3]  The judge denied the motion, stating that Gregg had ample time to subpoena his mother and that Gregg "still ha[d] time to get on the phone and call her" to testify.  The judge also noted that

---

[3] The prosecutor noted, "[I]f he had a doctor's prescription, he could have presented that and we wouldn't be here today."

4

Gregg had presented no evidence that he had a valid prescription for Adderall.

¶7.    The judge then asked White if he had "had an opportunity to talk to Mr. Gregg about a doctor or potential prescription for the substance in question."  The judge's question eventually led to the following exchange between White and Gregg:

MR. WHITE:    [Gregg] gave me a letter.  I provided it to the State.  I don't know the admissibility of it or the -- I'm not aware of how -- I don't want to say my feelings on it because it would prejudice his case.

. . . .

MR. WHITE:    Based on what's been presented to me this morning from Mr. Gregg, he is adamant this doctor can procure a prescription for this substance.  He's adamant but I can't say that I've seen anything, Your Honor.  I mean we're -- You have to speak to me.

MR. GREGG:    And that I brought my current prescription to show that I was prescribed --

MR. WHITE:    On this day?

MR. GREGG:    It was 11 months prior, and that was my medicine from that prescription just 11 months prior that I kept it around in case I needed it. (Inaudible) --

(The defendant is having simultaneous conversation with his counsel.)

-- because there's a change in medication.  That's my proof that I'm innocent.

MR. WHITE:    Do you have that prescription?

MR. GREGG:    I had -- the evidence I'm going to present to the State and the letter from the doctor --

MR. WHITE:    It's got to be a prescription.

MR. GREGG:    It's a letter from the doctor, and she will testify that she

5

> prescribed it to me a warm body to testify. And I just --

MR. WHITE: I'll renew my -- I understand the Court's position . . . .
We would just renew our request for a continuance.

The judge then once again denied the request for a continuance.

¶8. After the State rested its case, the prosecutor informed the trial judge that Gregg had disclosed "a letter from a nurse practitioner, Tina Clearman," which was marked for identification. The letter was unsworn, addressed "To Whom It May Concern," and dated April 12, 2022—nine days prior to trial. The letter stated that Clearman was Gregg's psychiatric nurse practitioner and that Gregg was "on Adderall 30 mg at [that] time." The letter also listed "medications that [Gregg] ha[d] taken in the past and the start and stop date" for each, including a prescription for "Adderall 20 mg" with a start date of January 17, 2019, and a stop date of February 14, 2019. As the prosecutor noted, that "stop date" was over a year prior to Gregg's arrest. The State objected to the letter on the grounds of hearsay, authenticity, and relevance. The judge sustained the objection to the document on hearsay and authenticity grounds, noting that he would revisit the issue if the defense produced a witness who could lay a proper foundation for the document.

¶9. Gregg then called his wife to testify. On direct examination, she was asked whether she was "aware of [Gregg] getting a prescription at some point as late as 2019." She answered, "I think he has been on medication. And the doctor will prescribe Adderall or Xanax I guess. And sometimes I see -- I have seen it's blue; some is white, so --." On cross-examination, she testified that she had "seen the prescription before," but she did not know whether Gregg had a prescription when he was arrested.

6

¶10. Gregg then testified in his own defense. He stated that Clearman had prescribed him Adderall and that it had been in his car's center console for approximately eleven months prior to his arrest. He testified that Clearman "was trying to switch [him] away from Adderall," and he kept the pills from his last prescription "just in case [he] had felt any kind of withdrawal symptoms because [he] had been taking [Adderall] for . . . many years." Gregg stated that when he was arrested, he told Deputy Roberts that he "could provide proof for the prescription, and it was [his] understanding [the charge] was going to be thrown out." However, Gregg never provided proof of the prescription. Gregg denied that he told Roberts that he bought the Adderall from a man in Meridian.

¶11. On cross-examination, Gregg testified that the prescription label on the bottle "had just been rubbed off or worn out" or, in the alternative, that he might have transferred the pills to an unmarked "seven day pill binder bottle." Gregg denied telling Roberts that he did not have an Adderall prescription. He also denied that he was "swerving" or committed any traffic violations. Gregg claimed he had just gotten off work in Meridian and was on his way home when Roberts stopped him at 3 a.m. But he acknowledged that he was a considerable distance west[4] of Meridian and that he lives east of Meridian. He testified that he had gotten "turned around" before he exited the interstate and was pulled over on Lazy Acres Road.

¶12. The jury found Gregg guilty of both counts. The court sentenced Gregg to serve a term of ten years in the custody of the Department of Corrections for Count I and a $250 fine for Count II. Gregg filed a motion for a new trial, which was denied, and a notice of appeal.

---

[4] Chunky is about fifteen miles west of Meridian.

7

**ANALYSIS**

¶13. On appeal, Greg argues that his trial counsel provided ineffective assistance by failing to subpoena Clearman or another witness who could have verified that he had a prescription for Adderall. A defendant "is permitted to raise the issue of ineffective assistance of counsel on direct appeal. However, when this issue is raised, this Court's review is strictly limited to the appellate record." *Amos v. State*, 911 So. 2d 644, 656 (¶38) (Miss. Ct. App. 2005). "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (quotation marks and other brackets omitted). We may also address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.* If the record on direct appeal is insufficient to address a defendant's ineffective assistance claims, we will "dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief." *Sandlin v. State*, 156 So. 3d 813, 819 (¶20) (Miss. 2013).

¶14. Gregg's ineffective assistance claim cannot be decided on direct appeal and must be dismissed without prejudice. This Court is strictly "limited to the trial record on direct appeal," *id.*, and there is "insufficient evidence within the record to evaluate the claim."

8

*McClendon v. State*, 152 So. 3d 1189, 1191-92 (¶12) (Miss. Ct. App. 2014). Gregg's ineffective assistance claim cannot be decided on direct appeal because it necessarily "depends on . . . speculation" about what absent witnesses might have said if they had been called to testify—"evidence that is not part of the record in this appeal." *Murray v. State*, 345 So. 3d 610, 624 (¶39) (Miss. Ct. App. 2022).[5] On this issue, the record includes only an unauthenticated document that purports to be a letter from Clearman. However, Gregg's trial counsel suggested that he had some doubts about the document. As noted above, counsel stated, "[Gregg] gave me a letter. I provided it to the State. . . . I don't want to say my feelings on it because it would prejudice his case." On this record, we do not know what Clearman or any other absent witness would have testified to under oath. In addition, we do not know whether trial counsel had good reasons not to subpoena Clearman or other potential witnesses. *See Page v. State*, 987 So. 2d 1035, 1038 (¶11) (Miss. Ct. App. 2008) ("The mere fact that there was no evidence presented at trial . . . does not mean [trial] counsel did not investigate the issue.").

¶15. Therefore, on the present record, we cannot determine whether trial counsel's performance was deficient. Nor can we determine whether there is a reasonable probability that the result of the trial would have been different if Clearman or any other witness had

---

[5] *Accord, e.g.*, *McBeath v. State*, 271 So. 3d 579, 586-87 (¶24) (Miss. Ct. App. 2018) (holding that a claim "alleg[ing] that counsel failed to discover evidence that [was] not in the record" could not be decided on direct appeal); *Johnson v. State*, 191 So. 3d 732, 736 (¶14) (Miss. Ct. App. 2015) (holding that a claim that "trial counsel failed to investigate and present available evidence" could not be decided on direct appeal).

9

testified.[6]  For that reason, we affirm Gregg's convictions and sentences, but we dismiss Gregg's ineffective assistance claim "without prejudice" to his "right to raise the claim[] later in a properly filed motion for post-conviction relief."  *Sandlin*, 156 So. 3d at 819 (¶20).

¶16.   **AFFIRMED.**

      **BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[6] To prevail on a claim of ineffective assistance, the defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Stated differently, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  The defendant "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008).  "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).